## Dick-Hopkins, Inc. Appeal

*Charles S. Wilson,* for appellant.

*George M. Bush,* for township.

RUFE, J., August 4, 1972.—Appellant, Dick-Hopkins, Inc., seeks a special exception to operate a retail establishment for the sale and leasing of camp trailers, mobile home campers, recreational vehicles and supplies, and industrial vehicles on a lot located in a "C" commercial zone in New Britain Township. After hearing, the New Britain Township Zoning Hearing Board denied the application and this appeal was taken by the applicant. At the conference under Bucks County Rule of Civil Procedure *27 it was agreed that the matter be submitted on the record made before the zoning hearing board, supplemented only by photographs identified as exhibit "P-1" through "15" and a curb cut approval from the Commonwealth of Pennsylvania, Department of Highways, identified as exhibit "P-16," a copy of which was attached to appellant's brief. The exhibits were submitted at the time of argument before the court en banc and were received into the record pursuant to the stipulation of the parties. The record having thus been supplemented and thereby expanded beyond that presented to the zoning hearing board, this court now deliberates upon this matter de novo.

The pertinent section of the New Britain Township Zoning Ordinance pertaining to the "C" commercial district provides, in part, as follows:

"SECTION 501. Use Regulations. A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other:

". . .

"7. The following uses when authorized by the Board of Adjustment as a special exception:

"i. Public garage, motor vehicle or farm machinery sales agency, motor vehicle service station, parking

lot, provided all services are conducted within the confines of the lot. No entrance or exit shall be located within one hundred (100) feet of a property used for school, church or hospital, and no gasoline pumps or filling hoses shall be installed within twenty-five (25) feet from the abutting street line.

". . .

"k. Any use of the same general character as any of the above permitted uses when authorized as a special exception."

In finding of fact no. 7 of its opinion the zoning hearing board makes its only reference to its determination of whether or not the applicant falls within either subsection 7i. or 7k. of section 501 of the Zoning Ordinance, above quoted, in the following manner:

"7. Applicant contends that the proposed use is permitted as a special exception under Section 501(7)I of the New Britain Township Zoning Ordinance which provides 'public garage, motor vehicle or farm machinery sales agencies, motor vehicle service station, parking lot, . . .' are permitted by special exception. It is alleged that the proposed use is 'close to' the aforementioned uses."

While it is not clear from the language of this finding of fact whether or not the zoning hearing board was actually finding that the proposed use is "close to" the permitted uses, or merely acknowledging that they understood the basis of the application, the record discloses that the proposed use probably does fall within a broad interpretation of subsection 7i. above. But any lingering doubt that the use is permitted by special exception is removed under the catch-all language of subsection 7k., for the use clearly is of the "same general character" as the permitted uses. Therefore, we will assume that the

zoning hearing board, in finding of fact no. 7 of its opinion, did correctly intend to determine that the proposed use fell within the category permitted by special exceptions.

Having thus correctly determined that the proposed use was permitted by special exception, did the zoning hearing board abuse its discretion or make an error of law in denying the application? Kotzin v. Plymouth Township Zoning Board of Adjustment, 395 Pa. 125 (1959). We believe that the board did so err.

While the zoning hearing board entered a general conclusion of law to the effect that "the proposed use would be detrimental to the health, safety and general welfare of the particular locality involved as well as the Township generally," the only findings .of fact or other conclusions of law related to that overall conclusion, refer to "traffic hazard" (finding no. 8), "traffic hazard" (finding no. 10), "hazardous condition to motorists" (finding no. 14), "hazardous traffic situations" (conclusion no. 2), "flow of traffic" (conclusion no. 4), and overcrowding the site where the proposed use would occur (findings nos. 12 and 13, and conclusions nos. 3 and 5).

The law is clear that when an applicant brings himself within the requirements for the granting of a special exception, the burden of proving an adverse effect on the safety, morals and public welfare of the community is upon those raising that objection: Mignotti Construction Company, Inc.'s Zoning Application, 3 Com. Ct. 242 (1971). Therefore, we must ascertain whether or not the record discloses testimony supporting the board's determination that anticipated traffic conditions or overcrowding of the proposed site are likely to adversely affect the safety, morals or public welfare of the community.

In reviewing the record we find that five persons

spoke at the hearing besides the applicant. (None of the five were sworn, and, therefore, there is some question on that point as to the validity of their observations as testimony. Only the applicant gave testimony under oath.) The two adjacent property owners, Edwin Hendrix and Sylvia Susan Kahn used the hearing as an opportunity to vent their wrath on the applicant because of personal differences arising out of the construction of a wall near their respective property lines, and in the case of Mrs. Kahn, a dissatisfaction over the price the applicant offered her for her property. Neither mentioned traffic problems or overcrowding of the land in their initial testimony, although Mrs. Kahn, near the end of the hearing, did voluntarily express her opinion that the curb openings on the applicant's property are dangerous.

The third witness, one Will Heiser testified primarily to irrelevant and immaterial matters pertaining to submitting zoning applications to the Township Planning Commission; his interpretation of irrelevant provisions of the zoning ordinance; and his understanding of Penndot requirements on curb cuts.

Finally, at the end of his statement, he volunteered his unqualified and unsubstantiated, and, therefore, inadmissible, opinion that the use would overcrowd the site and create a hazardous traffic condition. However, on cross-examination, Mr. Heiser acknowledged that he was not too familiar with the property as to the overcrowding question as he no longer lived nearby and his testimony again on cross-examination tended to establish that the intersection was well controlled and negated his earlier hazardous intersection opinion.

The last two witnesses were a woman identified only as Mrs. Dietcher who was concerned only that the board view the intersection before making their decision, and Audrey Heiser, wife of Will Heiser, who

offered her unqualified and unsubstantiated, and also, therefore, inadmissible, opinion that the use made the intersection dangerous.

In short, there does not appear to be any significant evidence whatsoever to substantiate a finding of hazardous traffic conditions arising from the proposed use or an overcrowding of the site that would be sufficient to support the conclusion that the safety, morals or public welfare of the community would be adversely affected. Certainly, there is nothing in the record to support a conclusion that the opponents have sustained the burden of proof to that effect and, accordingly, we reverse the decision of the New Britain Township Zoning Hearing Board and enter the following

### ORDER

And now, to wit, August 4, 1972, the decision of the New Britain Township Zoning Hearing Board denying the application of Dick-Hopkins, Inc., is hereby reversed and the special exception, as applied for by Dick-Hopkins, Inc., in the above matter, is hereby granted.